# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| CARL WOODARD, | : | No. 3:18cv140 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| SCRANTON QUINCY HOSPITAL | : | |
| COMPANY, LLC, | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Carl Woodard has moved for leave to file an amended complaint. Defendant Scranton Quincy Hospital, LLC, asserts that plaintiff's motion for leave to amend should be denied because the proposed amendments to the complaint are futile. The matter is briefed and ripe for disposition. For the following reasons, plaintiff's motion will be denied in part and granted in part.

## Background

Plaintiff Carl Woodard, an African American male, was hired by Defendant Scranton Quincy Hospital Company, LLC, as a housekeeper in January of 2006. (Doc. 1, Compl. ¶ 12).  Throughout his employment, however, the plaintiff alleges that he was subjected to racial discrimination and harassment. (Id. ¶ 13).  By way of example, plaintiff's co-worker regularly referred to the plaintiff by using an offensive racial epithet. (Id. ¶ 15).  The co-worker's actions were reported to the defendant's Human Resource Department, but no immediate action was taken.

(Id. ¶ 16). The co-worker was eventually placed on a four-day suspension. (Id. ¶ 17). The plaintiff further alleges that another co-worker told the plaintiff she "hate[s] black rats," the "bigger the rat, the blacker the rat," and that "all rats are black." (Id. ¶ 18). Plaintiff called the defendant's employee hotline to complain of racial discrimination and harassment and again contacted the defendant's Human Resource Department. (Id. ¶¶ 19, 20).

Despite being the victim of racial discrimination, the plaintiff alleges that the defendant placed him on an unpaid four-day suspension to investigate complaints about him in April of 2016. (Id. ¶ 21). When the allegations were determined to be unfounded, the plaintiff was allowed to return to work. (Id. ¶ 22). Plaintiff alleges, however, that the discrimination continued. (Id. ¶ 24). For at least the third time, the plaintiff once again complained to the Human Resource Department. (Id. ¶ 28).

On January 2, 2017, the defendant fired the plaintiff for two "no-call/no show" absences in April 2016. (Id. ¶ 31). Plaintiff contends that he sought and was granted approval for these absences, and prior to his termination had not received any discipline for attendance issues. (Id. ¶ 32).

Based on the foregoing allegations, plaintiff initiated this action on January 18, 2018 alleging race discrimination, harassment, hostile work environment, retaliation, and wrongful termination claims in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act. (Doc. 1). On September 28, 2018, the plaintiff filed the instant motion for leave to amend his complaint. (Doc. 21). The defendant opposes the motion, bringing this case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to Title VII of the Civil Rights Act of 1963 as well as 42 U.S.C. § 1983, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Courts treat motions to amend complaints differently depending on the timing of the motion and the context in which it is filed. A plaintiff may amend the complaint once as a matter of course within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or

(f), whichever is earlier." FED. R. CIV. P. 15(A)(1)(B). Thereafter, the plaintiff must obtain leave of the court to amend the complaint. FED. R. CIV. P. 15(A)(2).

District courts are instructed to "freely give leave when justice so requires." Id. In discussing the requirement that leave to amend be freely given, the Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). District courts are justified in denying leave to amend when the movant has unduly delayed the case, when the movant seeks leave in bad faith or with a dilatory motive, when granting leave would unduly prejudice the other parties, and when the amendment would prove futile. See Riley v. Taylor, 62 F.3d 86, 90 (3d Cir. 1995) (citing Foman, 371 U.S. at 182).

"The standard of legal sufficiency for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) determines whether a proposed amendment would be futile." Hogan v. Raymond Corp., 777 F. Supp. 2d 906, 912 (W.D. Pa. 2011) (citing In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). Thus, the sufficiency of the allegations in the proposed amended complaint are tested. All well-pleaded allegations must be viewed as true and in the light most favorable to the non-movant to determine whether, " 'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.' "

4

Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

    The federal rules require only that plaintiff provide " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' " a standard which "does not require 'detailed factual allegations,' " but a plaintiff must make " 'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.' " McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Twombly, 550 U.S. at 555-56). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).

**Discussion**

Plaintiff seeks to expand his complaint by adding factual averments related to the plaintiff's need to care for his son's medical condition, which he argues necessitated that he take leave from work under the Family and Medical Leave Act (hereinafter "FMLA"). The plaintiff alleges that he applied for and was granted FMLA leave by the defendant in January of 2016. The defendant terminated his employment, however, in retaliation for his 2016 application and in anticipation of his reapplication for continued FMLA leave. According to the proposed amendments, the defendants were aware that the plaintiff's son suffered from a lifelong condition, which would require plaintiff to reapply for FMLA leave when such leave was due to expire.

The plaintiff seeks to add a claim for interference and a claim for retaliation in violation of the FMLA based on these facts. The FMLA contains two distinct

provisions prohibiting employers from: (1) interfering with an employee's exercise of her right to take reasonable leave for medical reasons; and (2) discriminating or retaliating against an employee who exercises this right. 29 U.S.C. § 2615(a); see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F. 3d 294, 301 (3d Cir. 2012); Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005). Here, the plaintiff alleges that the defendant terminated the plaintiff's employment because he required FMLA-protected leave.

The defendant contests the plaintiff's attempt to amend the complaint in this manner on the grounds that such amendment would be futile. The defendant argues that the plaintiff has failed to meet the required standard to plead FMLA interference and retaliation claims, thus amendment should not be permitted. We will review plaintiff's proposed FMLA interference and FMLA retaliation claims in turn.

**I. FMLA Interference**

As noted above, the plaintiff's proposed amended complaint includes a new claim for interference in violation of the FMLA. To assert a claim for FMLA interference, the plaintiff must establish: (1) he was an eligible employee under the FMLA; (2) the defendants were an employer subject to the FMLA's requirements; (3) he was entitled to FMLA leave; (4) he provided notice to the defendants of his intention to take FMLA leave; and (5) he was denied benefits to

7

which he was entitled under the FMLA." Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (citations omitted). "Also, '[b]ecause the FMLA interference claim] is not about discrimination, a McDonnell Douglas burden-shifting analysis[1] is not required.'" Id. at 192 (quoting Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006)).

The defendant argues that plaintiff's proposed FMLA interference claim is, in effect, identical to his proposed FMLA retaliation claim, and should therefore be dismissed. We agree. The law provides that in a situation where a plaintiff presents both an interference claim and a retaliation claim on the basis that a defendant took adverse employment action against him because he requested FMLA leave, those claims should be analyzed as a single FMLA retaliation claim. See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 147 (3d Cir. 2004) (plaintiff claimed that his FMLA leave was used by the employer as a negative factor in the decision to discharge him, thus the court characterized the claim as a retaliation claim rather than an interference claim); Mascioli v. Arby's Restaurant Group, Inc., 610 F. Supp. 2d 419 (W.D. Pa. March 16, 2009) ("Plaintiff's interference claim is different ... because plaintiff claims her right to FMLA leave was interfered with after she requested leave.... Plaintiff's argument with respect to her interference claim is that defendant took an adverse

---

[1] McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1973).

8

employment action because she requested leave. This is, in essence, identical to her retaliation claim in count two").

Here, plaintiff asserts that the defendant terminated his employment because he took and/or was about to reapply for FMLA leave, a hallmark FMLA retaliation claim. As such, we will deny plaintiff's motion to amend with respect to his proposed FMLA retaliation claim, and analyze plaintiff's remaining proposed amendments under an FMLA retaliation claim framework.

**II. FMLA Retaliation**

To properly present an FMLA retaliation claim, the plaintiff must assert that: (1) he engaged in a protected activity under the FMLA; (2) he experienced an adverse employment action following the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). Here, the plaintiff's proposed amendments establish that he did request FMLA leave and his employment was terminated. The defendant challenges, however, whether the plaintiff's proposed amendments support a causal link between these events.

"To demonstrate a causal connection, a plaintiff generally must establish 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism, coupled with timing[,] to establish a causal link.' " Budhun v. Reading Hosp. &

9

Med. Ctr., 765 F.3d 245, 258 (3d Cir. 2014) (quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)); see also Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 196 (3d Cir. 2015) (noting that causation may be established by suggestive timing or other circumstantial evidence that supports the inference of retaliation). "Whether a causal link exists 'must be considered with a careful eye to the specific facts and circumstances encountered.' " Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000)). The Third Circuit has also emphasized that:

> it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.... When there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation.

Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997).

Regarding temporal proximity, the Third Circuit has held that an adverse employment action occurring within ten days from the date of the protected action is unduly suggestive. See, e.g., Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (ten days viewed as unusually suggestive); Lichtenstein, 691 F.3d at 307 (determining that termination less than a week after the plaintiff invoked her right to FMLA leave established causation); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (reversing summary judgment for the

defendant when plaintiff was fired two days after his employer received notice of his EEOC complaint).

The Third Circuit has noted that a temporal proximity greater than ten days, however, requires supplementary evidence of retaliatory motive. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (three months is not unusually suggestive); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir, 2004) (two months is not unusually suggestive); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding temporal proximity not unduly suggestive when three weeks had elapsed between protected activity and adverse employment action); Farrell, 206 F.3d at 280 (finding that temporal proximity greater than ten days requires supplementary evidence of retaliatory motive). Where temporal proximity is not unduly suggestive, the court must ascertain whether the evidence as a whole, including evidence of intervening antagonism, nevertheless raises an inference of discrimination. LeBoon, 503 F.3d at 232.

Here, plaintiff's proposed amendments fail to establish a close temporal proximity establishing a causal link between the protected activity and the adverse employment action. Plaintiff requested intermittent FMLA leave in January of 2016. (Doc. 21, Exh. A, Prop. Amend. Compl. ¶ 18). The defendant approved the plaintiff's request on Febraury 24, 2016. (Id. ¶ 19). The defendant

terminated plaintiff's employment on January 2, 2017. (Id. ¶ 35). Nearly one year passed before plaintiff's termination, which fails to establish an unduly suggestive temporal proximity between the protected activity and the alleged retaliatory action. Further, although the plaintiff also argues that he was terminated in anticipation of his reapplication for FMLA leave, the proposed amendments are void of details regarding the timing of reapplication.

Thus, having determined that the temporal proximity between the protected activity and the adverse action is not unduly suggestive, we next determine whether plaintiff's allegations as a whole raise an inference of discrimination. After a careful review, we find that plaintiff has satisfied his burden regarding causation at this initial stage of litigation.

The defendant worked for the defendant since 2006. (Id. ¶ 12). After applying for FMLA leave in January of 2016, the defendant began taking intermittent medical leave as needed. (Id. ¶ 19). The defendant was aware that the FMLA leave was for the plaintiff's son, who suffered from a lifelong condition. (Id. ¶ 99). On each occasion that the plaintiff required FMLA leave related to his son's medical condition, the plaintiff informed the defendant of his absence. (Id. ¶ 21). On January 2, 2017, the defendant terminated the plaintiff's employment for absences that occurred in April of 2016. (Id. ¶ 35). The plaintiff contends that he had previously sought and was granted approval for those absences. (Id. ¶ 36).

The plaintiff avers that the defendant knew that he would need more leave in the future, and therefore terminated his employment. (Id. ¶ 1).

Viewing plaintiff's allegations as true, we find that the plaintiff has sufficiently pled a causal connection between his protected activity and defendant's decision to terminate his employment at this initial stage of the proceedings.

**Conclusion**

Accordingly, plaintiff's motion for leave to amend his complaint will be granted in part and denied in part. Plaintiff's motion will be denied as it relates to the FMLA interference claim. Plaintiff's motion will be granted as it relates to the FMLA retaliation claim. An appropriate order follows.

**BY THE COURT:**

**Date: November 16, 2018**

s/ James M. Munley_____
**JUDGE JAMES M. MUNLEY
United States District Judge**